No. 88-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

SHERMAN HAWKINS,

        Defendant and Appellant.

'89 OCT 19 AM 9 53
FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Allen Beck, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Robert F.W. Smith, Asst. Atty. General, Helena
        Harold Hanser, County Attorney; Donna Heffington,
        Deputy County Atty., Billings, Montana

Submitted on Briefs: Aug. 24, 1989

Decided: October 19, 1989

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Following trial in the Thirteenth Judicial District, Yellowstone County, the jury found Sherman Hawkins guilty of felony assault. The court designated Hawkins a persistent felony offender and a dangerous offender. Hawkins appeals all three decisions. We affirm.

## ISSUES

The appellant raises the following issues:

1. Whether the trial court had jurisdiction to designate the defendant a persistent felony offender.

2. Whether the trial court properly designated the defendant a dangerous offender.

3. Whether res judicata and double jeopardy should have precluded the defendant's second trial.

4. Whether the former prosecution should have precluded the defendant's second trial.

5. Whether the trial court should have suppressed the fruits of the parole officer's search of the defendant's vehicle.

## FACTS

On February 5, 1987, LaVon Bretz called the Billings Police Department to report that Sherman Hawkins had threatened to kill Bretz, Hawkins' ex-wife Francis Kunz, and himself. Responding officers learned from the appellant's parole officer that Hawkins was on a work release furlough from a first degree murder conviction, that he might be armed and dangerous, and that he was to be arrested if he was carrying any weapons. While patroling the area of the Kunz home, Deputy Sheriff Dostal spotted Hawkins' pickup truck heading in the direction of the Kunz home and began following. Hawkins accelerated to between 80 and 85 miles per hour and the officer concluded that Hawkins was either intoxicated or trying to elude him.

2

When Hawkins stopped in the Kunz driveway, the police conducted a felony stop. A pat-down search produced a small pen knife and a set of brass knuckles. The officers arrested Hawkins for carrying a concealed weapon and for parole violation. Hawkins denied the officers permission to search his vehicle, but while removing the keys from the truck, one of the officers spotted the handle of a pistol on the floor. Hawkins' parole officer conducted a warrantless search of the pickup and seized a .38 caliber pistol, five cans of beer, and 1.2 pounds of marijuana.

During processing at the Yellowstone County Sheriff's Office, Hawkins allegedly attacked and attempted to strangle attending Officer Dostal. Hawkins escaped, but was later captured in Arizona. He returned to Montana to face charges of felony assault, carrying a concealed weapon, possession of dangerous drugs, and felony escape.

The jury found Hawkins guilty of felony drug possession and misdemeanor escape, but returned a hung verdict on the assault and weapon charges. The court designated Hawkins a persistent felony offender. Following retrial on the felony assault charge, the jury found Hawkins guilty. The court added another persistent felony offender designation and also designated Hawkins a dangerous offender.

## I.  Persistent Felony Offender Status

The appellant argues that the District Court did not gain jurisdiction to designate him a persistent felony offender because the prosecution failed to provide timely notice. The appellant correctly points out that written notice must be given before the case is called for trial, § 46-18-503(1), MCA, and that the requirement is jurisdictional, State v. Madera (1983), 206 Mont. 140, 155, 670 P.2d 552, 560. The appellant fails to note that a second, procedural notice is also required prior to sentencing.

3

§ 46-18-503(3), MCA; Madera, 206 Mont. at 155, 670 P.2d at 560.

The record in this case clearly shows that the State gave appropriate notice in both prosecutions. In the first case, jurisdictional notice was given on September 3, 1987, and trial began on April 12, 1988. The prosecution gave the second, procedural notice on May 11, 1988, and sentencing took place on May 24, 1988. In the second case, jurisdictional notice was given on September 1, 1988, and trial began on October 11, 1988. The prosecution gave the second, procedural notice on October 17, 1988, and sentencing took place on October 25, 1988.

The appellant raises a second objection. Without elaborating on his argument or citing any authority, the appellant asserts that the District Court erred in its second designation of Hawkins as a persistent felony offender because both underlying convictions arose from a single transaction.

The fact that both crimes arose out of the same transaction does not in itself bar application of the persistent felony offender designation. A persistent felony offender is defined as,

> an offender who has previously been convicted
> of a felony and who is presently being sen-
> tenced for a second felony committed on a
> different occasion than the first.

§ 46-18-501, MCA.

The statute requires that the offender has committed at least two felonies. The test of whether more than one crime results from the same transaction is whether the elements of each charged offense require proof of a fact which the others do not. State v. Gray (1983), 207 Mont. 261, 269, 673 P.2d 1262, 1267. The first jury found Hawkins guilty of felony drug possession which requires the prosecution to prove that the defendant knowingly, purposely, or negligently possessed more than sixty grams of marijuana. § 45-9-102(2), (4), MCA; § 45-2-103(1), MCA. The second jury found

4

Hawkins guilty of felony assault which required proof that he knowingly and purposely caused bodily injury to a peace officer who was responsible for his custody. § 45-5-202(2)(c), MCA. Clearly, these are separate crimes.

The statute also requires that the offender must have committed the felonies on different occasions. We have not yet considered what constitutes different occasions for the purposes of the persistent felony offender statute. In interpreting its version of the statute, the Arizona Supreme Court stated,

> We know of no all-encompassing test to determine whether different crimes fall within the "same occasion" limitation of the statute. Any analysis of the question must have reference to the time, place, number of victims, and distinct nature of the defendant's acts. In general, however, when different crimes, even though unrelated in nature, are committed at the same place, on the same victim or group of victims, and at the same time or as part of a continuous series of criminal acts, they should be considered as having been committed on the "same occasion" for purposes of sentence enhancement.

State v. Henry (Ariz. 1987), 734 P.2d 93, 97. (Citation omitted.)

We apply a similar analysis here and hold that Hawkins' two felony crimes occurred on different occasions. The drug possession charge is a crime against the state which occurred prior to Hawkins' arrest in the Kunz driveway. The assault against Deputy Dostal occurred some hours later in the Yellowstone County Courthouse. Though the assault during escape was a result of Hawkins' drug-related arrest, the crimes are sufficiently disparate in time, place, and victim that they cannot be said to have occurred on the same occasion. The second persistent felony offender designation was appropriate.

## II. Dangerous Offender Status

The appellant argues that the record does not contain substantial credible evidence to support dangerous offender status. He correctly points out that the trial court must articulate reasons based on substantial credible evidence and may not simply recite the statute. See In the Matter of McFadden (1980), 185 Mont. 220, 222, 605 P.2d 599, 600.

The District Court has amply satisfied the McFadden requirements. Among other factors, the court considered the presentence report, the appellant's prior criminal history, the inability of the appellant to live in the community for more than three years without being convicted of felony drug possession and felony assault, and the violence of the crime and danger to the victim.

## III. Res Judicata and Double Jeopardy

Again with little elaboration and no authority, the appellant asserts that in convicting him of misdemeanor escape and not of felony assault, the first jury determined that Hawkins did not assault Officer Dostal and, therefore, he cannot be tried again on the same factual issue.

The question of double jeopardy is easily settled; it does not arise when the state charges the defendant with felony escape and felony assault. State v. Thornton (1985), 218 Mont. 317, 325, 708 P.2d 273, 278-79.

The issue of res judicata is more complex. In Sealfon v. United States, the United States Supreme Court held that res judicata may be a defense to a criminal prosecution. The doctrine "operates to conclude those matters in issue which the [previous] verdict determined though the offenses be different." Sealfon v. United States (1948), 332 U.S. 575, 578, 92 L.Ed. 180, 184, 68 S.Ct. 237, 239. Similarly, this Court stated in a criminal case, that "a final judgment on the merits by a court of competent

6

jurisdiction is conclusive as to . . . issues thereby litigated
. . . ." Coleman v. State (Mont. 1981), 633 P.2d 624, 629, 38
St.Rep. 1352, 1357-58.

The pivotal question in the case sub judice is what issues the
jury decided in the first trial. If the jury decided that Hawkins
did not assault Officer Dostal, res judicata would bar re-litiga-
tion of that issue. Faced with a similar problem in Sealfon, the
United States Supreme Court looked to the facts necessarily adduced
at trial and the jury instructions. Sealfon, 332 U.S. at 578-79,
92 L.Ed. at 184, 68 S.Ct. at 239.

The Hawkins court instructed the jury that to find the
defendant guilty of felony assault, they would have to conclude
that he attempted to strangle Officer Dostal. On the issue of
escape, the court instructed the jury to first consider the crime
of felony escape, which also required a finding that Hawkins
attempted to strangle Officer Dostal. The court further instruct-
ed, "In the event you cannot find the defendant guilty of . . .
ESCAPE (FELONY), you must consider the lesser included offense of
ESCAPE (MISDEMEANOR) . . . ." The jury returned a verdict of
guilty of misdemeanor escape, but hung on the assault charge.

Contrary to appellant's assertion, it is apparent that the
jury did not conclude that Hawkins did not assault Officer Dostal.
They explicitly failed to come to any conclusion on that issue by
entering no verdict on the assault charge. Since the jury could
not decide if Hawkins assaulted Officer Dostal, they could not find
him guilty of felony escape, but could, and did, find him guilty
of misdemeanor escape. Because the first jury never decided the
issue of assault, it was a proper subject of the second trial and
not blocked by the doctrine of res judicata.

## IV. Lesser Included Offense

The appellant asserts without explanation that since Hawkins was not convicted of felony escape, he cannot be charged with the lesser included offense of felony assault. We have previously held that felony escape and felony assault are not inclusive, State v. Thornton (1985), 218 Mont. 317, 325, 708 P.2d 273, 278-79, and find no merit in the appellant's argument.

## V. Search and Seizure

The appellant lastly argues that the trial court erred in not suppressing the marijuana evidence found in Hawkins' truck because the evidence was the result of a warrantless search by parole officers. The appellant apparently contends that evidence discovered during a parole officer's search of a parolee should be restricted to parole revocation proceedings. We disagree.

The search in this case is controlled by our holding in State v. Burke. In that case we followed the United States Supreme Court in holding that a probation officer may search a probationer's vehicle without a warrant as long as the officer has reasonable cause. Burke (Mont. 1988), 766 P.2d 254, 256, 45 St.Rep. 2278, 2280.

Reasonable cause existed in the present case. While on furlough from a first degree murder sentence, Hawkins threatened to kill LaVon Bretz and Francis Kunz. Arresting officers found brass knuckles in his pocket and his erratic driving indicated that Hawkins may have been intoxicated. The parole officer was thereby given reasonable cause to search Hawkins' vehicle for alcohol and weapons. The marijuana was a fortuitous discovery pursuant to a lawful search.

The conduct of the police officers is also controlled by our holding in Burke. In Burke, we noted that probation officers are not always available in Montana, and we encouraged police and

probation officers to cooperate and communicate in the effective administration of the probation system. Burke, 766 P.2d at 257, 45 St.Rep. at 2283. Parole officers were available in this case, and the cooperation and communication were appropriate. Hawkins' parole officer was notified early in the incident and the information he provided insured an uneventful arrest. The police waited for the parole officer to make the decision to conduct a search of the vehicle. The parole officer determined that he had reasonable cause and that no warrant was necessary.

We take note of the apparent contradiction between Hawkins' adamant refusal to allow the police to search his vehicle and the officers' testimony that Hawkins paradoxically gave them permission to secure the pickup truck by removing the keys. Hawkins testified that he never authorized removal of the keys. The District Court, as the finder of fact in the suppression hearing, chose to believe the police officers rather than Hawkins. Without more evidence, we hold that the court did not abuse its discretion.

The appellant argues that Hawkins' parole officer acted as a mere "pawn" of the police in searching Hawkins' vehicle. In Burke we stated that probationers should not be afforded a fortuitous opportunity to escape punishment for probation violations simply because probation officers were not present during observation or arrest. Burke, 766 P.2d at 257, 45 St.Rep. at 2282-83. We will also not give parolees carte blanche to avoid punishment for criminal acts simply because a police arrest led to a lawful search by parole officers.

We find the appellant's assertions without merit.

Affirmed.

J. A. Turnage
Chief Justice

We concur:

_John Conway Harrison_

_William E Hunter_

_R.C. McDonough_

_____
Justices

10